THOMAS W. LATHRAM (CA SBN 59639)
tom@siliconedgelaw.com
MARK A. LAUER (CA SBN 163756)
mark@siliconedgelaw.com
SILICON EDGE LAW GROUP LLP
7901 Stoneridge Drive, Suite 528
Pleasanton, California 94588
Telephone: (925) 621-2110
Facsimile: (925) 621-2119

Attorneys for Plaintiff
ZOHO CORPORATION PVT. LTD.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZOHO CORPORATION PVT. LTD. | Case Number: 3:20-cv-1573 |
| Plaintiff, | **COMPLAINT FOR DECLARATORY JUDGMENT** |
| v. | |
| HUBSPOT, INC., | **DEMAND FOR JURY TRIAL** |
| Defendant. | |

Plaintiff Zoho Corporation Pvt. Ltd. ("Zoho" or "Plaintiff") for its Complaint against Defendant Hubspot, Inc. ("Hubspot" or "Defendant") alleges as follows:

**PARTIES**

1. Plaintiff Zoho is a corporation duly organized and existing under the laws of the country of India, with a principal place of business at Estancia IT Park, Plot No. 140 & 151, GST Road, Vallancherry Village, Chengalpattu Taluk, Kanchipuram District 603 202, India, and is the parent of Zoho Corporation, a wholly owned subsidiary corporation duly organized and

existing under the laws of the State of California, having its principal place of business at 4141 Hacienda Drive, Pleasanton, California 94588.

2. On information and belief, Defendant Hubspot is a corporation duly organized and existing under the laws of the state of Delaware, with a place of business at 25 First Street, Cambridge, Massachusetts 02141.

## JURISDICTION AND VENUE

3. This is an action seeking a declaratory judgment that Zoho has not infringed any of Hubspot's trademark rights and has not engaged in unfair competition. This Court has subject matter jurisdiction under 28 U.S.C. §§ 2201(a), 2202 (Federal Declaratory Judgments Act), 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1338(a) (trademarks), and 15 U.S.C. § 1121 (Lanham Act), and has supplemental jurisdiction under 28 U.S.C. § 1367.

4. This Court has personal jurisdiction over Defendant Hubspot because it conducts business in the State of California and within this district, including the advertising and sale of its products over the Internet to customers in California, and has contracts with business customers and partners resident in California. In addition, Defendant has sent two cease and desist letters to Zoho, one to Zoho in India and one to Zoho's attorneys in this district. One of the letters asserts that Hubspot's trademarks are "well-known and famous" and that Hubspot has "made a substantial investment in marketing, advertising and promoting the identification of its trademarks to its customers and the online community." These assertions necessarily mean that Defendant has conducted widespread and systematic advertising and business activities in this district.

5. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial portion of the activities giving rise to the claim occurred in this district.

## INTRADISTRICT ASSIGNMENT

6. This is an action involving intellectual property rights and pursuant to Civil Local Rule 3-2(c) is to be assigned on a district-wide basis.

## GENERAL ALLEGATIONS

### Zoho and Zoho's Trademarks

7. Zoho provides a comprehensive suite of software to run an entire business and to solve business problems. Zoho has more than 50 million users worldwide.

8. The term "Zoho" is a coined and fanciful word that has no meaning in the English language other than as an identifier of the source of goods and services. Zoho owns twelve registered trademarks that comprise either the singular term "Zoho" or the term "Zoho" followed by another word. In addition, Zoho has another nine pending applications for trademarks that comprise the term "Zoho" followed by another word.

9. Plaintiff's "Zoho" marks are strong and distinctive and have developed significant goodwill and secondary meaning among consumers as identifying Zoho as the source of Zoho's goods and services.

10. This action involves Zoho's use of the trademark "ZOHO MARKETINGHUB," for which Zoho has a pending application (Serial No. 88/092,743). Zoho uses the "Zoho MarketingHub" trademark in connection with "providing on-line non-downloadable software" in International Class ("IC") 42, as described more fully in the application.

11. The trademark Examining Attorney for Zoho's application for "ZOHO MARKETINGHUB" considered the term "MARKETINGHUB" to be descriptive of the described services and required that Zoho disclaim any rights in that term apart from the mark as shown in the application.

12. Zoho's application for "ZOHO MARKETINGHUB" is currently in a suspended status pending the resolution of Defendant's pending application for the trademark "MARKETING HUB" (Serial No. 88/037,120), which is also currently in a suspended status and which is addressed more fully below.

### Hubspot and Hubspot's Trademarks

13. On information and belief, Defendant Hubspot provides on-line software products for inbound marketing and sales, and is the owner of a number of trademark

registrations, several of which comprise or include the term "Hubspot." Defendant also has several pending applications for trademarks that include the term "Hub" preceded by various descriptive terms. On information and belief, the term "Hub" is descriptive, and Defendant has, in connection with at least one of those applications, disclaimed any rights in that term apart from the mark as shown in the application, thereby admitting that the term "Hub" is descriptive of the described services.

14. Defendant is also the owner of the registered trademark "HUBSPOT MARKETING HUB" (Registration No. 5,856,678). On information and belief, the Examining Attorney for Hubspot's application for "HUBSPOT MARKETING HUB" also considered the term "MARKETING HUB" to be merely descriptive of the described services and required that Hubspot disclaim any rights in that term apart from the mark as shown in the application. Hubspot did in fact disclaim that term in its application for "HUBSPOT MARKETING HUB," thereby admitting that the term "MARKEING HUB" was descriptive of the described services.

15. As noted above, Defendant also has a pending application for the term "MARKETING HUB" (Serial No. 88/037,120). Defendant's initial application identified goods and services in IC 42 ("non-downloadable … software") and in IC 35 "(Marketing consulting").

16. The application was rejected with respect to the IC 42 services, *inter alia,* because the trademark examiner considered the term "Marketing Hub" to be merely descriptive of the "non-downloadable software" services in IC 42.

17. The application was also rejected with respect to the IC 42 services because the examiner determined that there was a likelihood of confusion over similar previously-registered marks ("MYMARKETING HUB", U.S. Registration No. 4,311,428, "CROSSCHANNEL MARKETING HUB", U.S. Registration No. 4,486,485, and "MARKETING HUB EXCHANGE", U.S. Registration No. 5,383,251.)

18. In response to these rejections, Defendant deleted the IC 42 "non-downloadable software" services from the application.

19. Defendant's application for "MARKETING HUB" was also rejected with respect to the IC 35 "marketing consulting" services because no specimen of use was submitted showing use of the mark in connection with "marketing consulting" distinct from the use of Defendant's non-downloadable software for marketing.

20. In response to this rejection, Defendant submitted a substitute specimen which was also rejected because it did not show use of the mark for IC 35 consulting services.

21. Defendant's application for MARKETING HUB is currently in a suspended status because the Examining Attorney considered that there was a likelihood of confusion over another then-pending application for another similar mark but, on information and belief, that other application has now been abandoned and the suspension will likely be lifted in the near future.

### Defendant's Claims

22. On January 17, 2019, Hubspot sent Zoho a cease and desist letter, referring to Defendant's various "Hubspot" and compound "Hub" trademarks, and asserting that Zoho's use of Marketing Hub constituted "trademark infringement, unfair competition, and dilution of [Hubspot's] trademark rights under the federal Lanham Act and various state laws." The letter put Zoho on notice of Hubspot's purported "trademark rights in HUBSPOT and Marketing Hub," and threatened litigation. A copy of Defendant's January 17, 2019 letter is attached hereto as Exhibit A.

23. On February 11, 2019, Zoho sent Defendant a letter carefully explaining that Hubspot did not have trademark rights in the descriptive term "Marketing Hub," that Hubspot's trademarks were not famous for purposes of trademark dilution law, that Zoho's numerous trademarks that include the coined and fanciful term "Zoho," including the "ZOHO MARKETINGHUB" trademark, were strong because the term "Zoho" has acquired significant goodwill and secondary meaning and is the dominant part of the marks, and there is no likelihood of confusion arising from Zoho's use of the "ZOHO MARKETINGHUB" trademark. A copy of Zoho's February 11, 2019 letter is attached hereto as Exhibit B.

24. On February 13, 2019, more than a year after Zoho's letter, Defendant sent another cease and desist letter that made the same sort of generalized claims as were made in Defendant's previous letter. The new letter asserted that Zoho's use of MarketingHub or Marketing Hub constituted "trademark infringement, unfair competition, and dilution of Hubspot's trademark rights," and referred broadly to "Hubspot's trademarks," the "Hubspot brand" and the "Hub brand." The letter notified Zoho that Hubspot had registered the trademark "HUBSPOT MARKETING HUB" and that Hubspot was seeking registration of "MARKETING HUB," but did not disclose the rejections that had been made of the "MARKETING HUB" application. In fact, it characterized registration of the "MARKETING HUB" trademark as "certain." The letter did not respond to any of the points made by Zoho in its letter to Hubspot, did not explain why Hubspot delayed for over a year before responding, and again threatened litigation. The letter demanded that Zoho immediately stop using the terms MarketingHub, Marketing Hub, or Hub in any manner, that Zoho expressly abandon its application for "Zoho MarketingHub," and that Zoho reimburse Defendant for "the costs it has incurred in investigating and responding to Zoho's infringement, including attorneys' fees." The letter gave Zoho one week to respond. A copy of Defendant's February 13, 2020 letter is attached hereto as Exhibit C.

**Non-infringement – There is No Likelihood of Confusion**

25. There is no likelihood of confusion arising out of Zoho's use of the "ZOHO MARKETINGHUB" mark for at least the reasons set forth below.

26. When assessing the likelihood of confusion between compound word marks, it is appropriate to consider whether a portion of a mark is dominant in creating the mark's commercial impression. The dominant portion of Zoho's mark is clearly the term "ZOHO." That term is a coined and fanciful term that has no meaning in English other than as a mark. It has been used for over fifteen years for products and services having over fifty million users, and thus dominates over the descriptive "MARKETINGHUB" portion of the mark.

27.     The "ZOHO" portion of the mark is also dominant in part because it comes first. The first part of a compound mark is often the portion that is likely to be impressed upon the mind of a customer and remembered.

28.     The fact that the "ZOHO" portion of the mark is dominant is reinforced by the fact that Zoho's mark is part of a family of marks that begin with or consist of the term "ZOHO," further strengthening the distinctiveness and secondary meaning associated with the mark.

29.     The likelihood of confusion with respect to compound marks is reduced if the portion of the marks that is substantially common to both marks is weak. Here, the substantially common portions are "MARKETING HUB" and "MARKETINGHUB." Those terms are merely descriptive for the non-downloadable software services described in the Zoho application for ZOHO MARKETINGHUB and in the Hubspot application for MARKETING HUB, as noted by the Examining Attorney for each application. Therefore, those terms are weak and are not likely to be perceived by customers as distinguishing the source of goods or services.

30.     For the same reason, a descriptive mark that has acquired no secondary meaning, such as Defendant's "MARKETING HUB," is entitled to little or no trademark protection.

31.     The weakness of Defendant's "MARKETING HUB" mark is also shown by the number of similar marks in use for similar services. In addition to the registered marks identified in paragraph 17 above that include the term "MARKETING HUB," there are numerous marks used by third parties that include the same or a similar term. For example, Salesforce promotes "The Marketing Hub by Salesforce", which offers services that are very similar to those of Defendant's purported mark for "MARKETING HUB".[1] Similarly, the "Best Digital Marketing Hub" offers "SEO", "Advertising", "Social Media", "Web Design", "Local Marketing" and "Email Marketing".[2] "Influencer Marketing Hub" offers similar services geared toward using influencers for marketing.[3] Optimove claims to offer "The Science-First Relationship Marketing Hub", but it's services appear similar to those of Defendant's purported mark for "MARKETING

---

[1] `https://www.salesforce.com/hub/marketing/`.
[2] `https://www.bestdigitalmarketinghub.com/`.
[3] `https://influencermarketinghub.com/`.

HUB".[4]  For similar services, SAP offers "The Marketing Data Hub 4CE"[5], Mitel offers a "Partner Marketing Hub"[6], Intuit offers an "Intuit Marketing Hub"[7], Sage offers a "Sage Worldwide Partner Marketing Hub"[8], RRD offers a "Marketing Hub"[9], Enphase offers the "Enphase Marketing Hub"[10], Microsoft offers a "Global marketing hub"[11], Google offers a "Partner Marketing Hub"[12] and Smart Insights offers a "Content Marketing Hub"[13]. The number of similar marks used by third parties for similar services underscores the weakness of the descriptive term "MARKETING HUB" and demonstrates that it is highly unlikely that confusion would arise from use by Zoho of the "ZOHO MARKETINGHUB" mark because consumers would not rely on the descriptive "MARKETINGHUB" portion of the mark to designate source.

32. Gartner, Inc., the leading business research and advisory company, even has a category for the "Multichannel Marketing Hubs Market," further evincing the descriptiveness of the term "Marketing Hub" for services such as "technology that orchestrates a company's communications with and offers to customer segments across multiple channels. These include websites, mobile, social, direct mail call centers, paid media and email. MMH capabilities also may extend to integrating marketing offers/leads with sales for execution in both B2B and B2C environments."[14]

33. Differences in the services for which the respective marks are used can also reduce the likelihood of confusion, and when the common portion of the respective marks is weak, as is the case with "MARKETINGHUB" and "MARKETING HUB," even small differences in the services can be significant. Zoho's application shows use of the "ZOHO

---

[4] https://www.optimove.com/.
[5] https://www.sapappcenter.com/apps/7011#!overview.
[6] https://www.mitel.com/partners/partner-marketing-hub.
[7] https://quickbooks.intuit.com/accountants/resources/marketing-hub/.
[8] https://www.sage.com/en-gb/partners/marketing-hub/.
[9] https://www.rrd.com/services/marketing/marketing-hub.
[10] https://go.enphase.com/intro-to-enphase-marketing-hub-05-17.
[11] https://lookbook.microsoft.com/details/abef115b-e40e-469d-9bc0-e91a7bddca19.
[12] https://partnermarketinghub.withgoogle.com/.
[13] https://www.smartinsights.com/content-management/content-marketing-strategy/a-content-marketing-and-inbound-marketing-blueprint/.
[14] https://www.gartner.com/reviews/market/multichannel-marketing-hubs.

COMPLAINT FOR DECLARATORY JUDGMENT                                Case No. 3:20-cv-1573

MARKETINGHUB" mark for "non-downloadable software" services in IC 42. Defendant has deleted "non-downloadable software" services in IC 42 from its application for "MARKETING HUB" and seeks registration of that mark only for "marketing consulting" services in IC 35. While there are some similarities in the text description of the respective services, there is no question that software is different from consulting, thus reducing the likelihood of confusion from use of the respective marks.

34. By their nature, the software services of Zoho's application and the consulting services of Defendant's application are both provided to businesses, and therefore the buyers of the respective services are sophisticated, non-impulse buyers. This sophistication of the buyers makes confusion unlikely.

35. Zoho's services and use of its mark are shown on Zoho's website, www.zoho.com, whereas Defendant's services and use of "MARKETING HUB" are shown on Defendant's website, www.hubspot.com, and customers must navigate to each company's website to purchase the respective services. Purchasers would not be confused that they are buying from Hubspot when navigating on Zoho's website, nor confused that they are buying from Zoho when navigating on Hubspot's website. On the other hand, if a consumer performed a general Internet search for the term "Marketing Hub," that consumer would encounter the numerous examples of services described by use of that term shown in paragraph 32 above, as well as Zoho's and Hubspot's services. Even unsophisticated consumers, let alone the business consumers at issue here, would understand that each of those "Marketing Hub" services are being offered at a different website, which is run by a different company. This factor also makes confusion unlikely.

36. For at least the above reasons, there is no likelihood of confusion arising from Zoho's use of the "ZOHO MARKETINGHUB" mark and therefore even if Defendant had trademark rights in the alleged "MARKETING HUB" mark, which it does not, Zoho does not infringe that mark.

37. For at least the above reasons, there is even less likelihood of confusion with respect to Defendant's "HUBSPOT MARKETING HUB" mark arising from Zoho's use of the "ZOHO MARKETING HUB" mark because Defendant's mark includes the distinguishing "HUBSPOT" house name, which is undoubtedly the dominant portion of the compound mark. Therefore, Zoho's use of the "ZOHO MARKETINGHUB" mark does not infringe Defendant's trademark rights in the "HUBSPOT MARKETING HUB" mark.

38. For at least the above reasons, there is no likelihood of confusion arising from Zoho's use of the "ZOHO MARKETINGHUB" mark with respect to any other Hubspot trademark, and Zoho does not infringe any other Hubspot mark.

### Defendant's Trademark Dilution Claim has No Merit

39. In addition to the reasons set forth above, Defendant's claim for trademark dilution has no merit at least for the reason that Defendant cannot show that its trademarks are famous within the meaning of the trademark dilution laws.

40. Zoho denies that it is liable for trademark dilution.

### Defendant's Unfair Competition Claim has No Merit

41. Defendant has not identified any basis for an unfair competition claim under either federal or state law other than its assertions that Zoho has infringed Defendant's trademark rights. For at least the same reasons that Zoho has not infringed Defendant's trademark rights, Defendant's claim for unfair competition has no merit.

42 Zoho denies that it is liable for unfair competition under either federal or state law.

### COUNT ONE

### Declaration of No Trademark Infringement

43 Zoho incorporates by reference the allegations of paragraphs 1 through 42 as though fully set forth in this paragraph.

44. Defendant Hubspot claims that Plaintiff Zoho's registration and use of the "ZOHO MARKETINGHUB" trademark is likely to cause confusion with respect to Defendants trademarks and infringes Defendant's trademark rights.

45. Plaintiff Zoho denies that its registration and use of the "ZOHO MARKETINGHUB" trademark is likely to cause confusion with respect to Defendant's trademarks and denies infringement of any of Defendant's trademark rights.

46. An actual and justiciable controversy exists between Plaintiff Zoho and Defendant Hubspot with respect to Defendant's claim that Zoho has infringed and is infringing Defendant's trademark rights.

47. Zoho has an objectively reasonable apprehension that it will be subject to a trademark infringement lawsuit brought by Defendant in light of Defendant's cease and desist letters.

48. In order to resolve the existing controversy, Zoho is entitled to a declaratory judgment confirming its rights pursuant to 28 U.S.C. § 2201.

49 Accordingly, Zoho seeks a judgment of this Court declaring that Zoho's registration and use of the "ZOHO MARKETINGHUB" trademark is not likely to cause confusion with respect to Defendant's trademarks and that Zoho is not infringing and has not infringed any of Defendant's trademark rights under federal or state trademark law.

## COUNT TWO

### Declaration of No Trademark Dilution

50. Zoho incorporates by reference the allegations of paragraphs 1 through 49 as though fully set forth in this paragraph.

51. Defendant Hubspot claims that Plaintiff Zoho's registration and use of the "ZOHO MARKETINGHUB" trademark is likely to dilute Defendants trademarks.

52. Plaintiff Zoho denies that its registration and use of the "ZOHO MARKETINGHUB" trademark is likely to dilute any of Defendant's trademarks.

53. An actual and justiciable controversy exists between Plaintiff Zoho and Defendant Hubspot with respect to Defendant's trademark dilution claim against Zoho.

54. Zoho has an objectively reasonable apprehension that it will be subject to a trademark dilution lawsuit brought by Defendant in light of Defendant's cease and desist letters.

55. In order to resolve the existing controversy, Zoho is entitled to a declaratory judgment confirming its rights pursuant to 28 U.S.C. § 2201.

56. Accordingly, Zoho seeks a judgment of this Court declaring that Defendant's trademarks are not famous within the meaning of the trademark dilution laws, and that Zoho's registration and use of the "ZOHO MARKETINGHUB" trademark is not likely to dilute any of Defendant's trademarks under federal or state trademark law.

## COUNT THREE

### Declaration of No Unfair Competition

57. Zoho incorporates by reference the allegations of paragraphs 1 through 56 as though fully set forth in this paragraph.

58. Defendant Hubspot claims that Plaintiff Zoho's registration and use of the "ZOHO MARKETINGHUB" trademark constitutes unfair competition.

59. Plaintiff Zoho denies that its registration and use of the "ZOHO MARKETINGHUB" trademark constitutes unfair competition.

60. An actual and justiciable controversy exists between Plaintiff Zoho and Defendant Hubspot with respect to Defendant's unfair competition claim against Zoho.

61. Zoho has an objectively reasonable apprehension that it will be subject to an unfair competition lawsuit brought by Defendant in light of Defendant's cease and desist letters.

62. In order to resolve the existing controversy, Zoho is entitled to a declaratory judgment confirming its rights pursuant to 28 U.S.C. § 2201.

63. Accordingly, Zoho seeks a judgment of this Court declaring that Zoho's registration and use of the "ZOHO MARKETINGHUB" trademark does not constitute unfair

competition and that Zoho is not liable to Defendant for unfair competition under federal or state unfair competition law.

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff Zoho respectfully requests that the Court grant the following relief:

A. A judgment of this Court declaring that:

    (a) Zoho's registration and use of the "ZOHO MARKETINGHUB" trademark is not likely to cause confusion with respect to Defendant's trademarks, and

    (b) Zoho is not infringing and has not infringed any of Defendant's trademark rights under federal or state trademark law.

B. A judgment of this Court declaring that:

    (a) Defendant's trademarks are not famous within the meaning of the trademark dilution laws, and

    (b) Zoho's registration and use of the "ZOHO MARKETINGHUB" trademark is not likely to dilute any of Defendant's trademarks under federal or state trademark law.

C. A judgment of this Court declaring that Zoho's registration and use of the "ZOHO MARKETINGHUB" trademark does not constitute unfair competition and that Zoho is not liable to Defendant for unfair competition under federal or state unfair competition law.

D. For Zoho's attorneys' fees and costs incurred; and

E. For such further relief as the Court deems just and equitable.

Dated: March 3, 2020    SILICON EDGE LAW GROUP LLP

By:   */s/ Thomas W. Lathram*
      Thomas W. Lathram

Attorneys for Plaintiff
Zoho Corporation Pvt. Ltd.

## JURY DEMAND

Plaintiff Zoho Corporation Pvt. Ltd. hereby demands a jury trial on all issues triable by a jury.

Dated: March 3, 2020            SILICON EDGE LAW GROUP LLP

By:   */s/ Thomas W. Lathram*
        Thomas W. Lathram

Attorneys for Plaintiff
Zoho Corporation Pvt. Ltd.